UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATTACHMATE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY FLORIDA, <br><br> Defendant. | CASE NO. C09-1180JLR <br><br> ORDER DENYING MOTION TO DISMISS |

## I.  INTRODUCTION

This matter comes before the court on Defendant the Public Health Trust of Miami-Dade County Florida's motion to dismiss for lack of personal jurisdiction or, in the alternative, motion to transfer (Dkt. # 11). Having considered the motion, as well as all papers filed in support and opposition, and deeming oral argument unnecessary, the court DENIES the motion to dismiss.

ORDER- 1

## II. BACKGROUND

Plaintiff Attachmate Corporation ("Attachmate") is a Washington corporation that develops and sells software products, including the Reflection and EXTRA! families of products ("Attachmate Products"). (Compl. (Dkt. # 1) ¶¶ 6-7.) Attachmate's current principal place of business is located in Seattle, Washington, and its former principal place of business was located in Bellevue, Washington. (*Id.* ¶ 1; *see* Declaration of Thomas Makey ("Makey Decl.") (Dkt. # 16), Ex. A.) The Attachmate Products are "terminal emulator" products. (Compl. ¶ 8.) This technology replaces so-called "dumb terminals," which provide a direct connection to host systems, by allowing users to access information on a host system from a personal computer. (*Id.* ¶¶ 8-9.) Attachmate owns copyrights of the Attachmate Products. (*Id.* ¶ 15.) Customers license and obtain software products through either Attachmate's sales representatives or authorized sellers. (*Id.* ¶ 10.)

The Public Health Trust of Miami-Dade County Florida d/b/a Jackson Memorial Hospital ("Jackson") is a Florida corporation with its principal place of business in Miami-Dade County, Florida. (*Id.* ¶ 2.) Jackson is a tax-supported health and hospital service provider with a mission of providing healthcare to the area's needy and uninsured population. (Mot. (Dkt. # 11) at 2 n.1.)

Attachmate and Jackson began their relationship in the mid-1990s. Jackson has purchased numerous copies of the Attachmate Products from Attachmate , and states that its most significant purchases were made between 2005 and 2007. (Declaration of Dennis Proul ("Proul Decl.") (Dkt. # 12) ¶ 4 (stating that "over a number of years, the

Trust has purchased a total of 7,000 copies for an Attachmate product known as 'Extra!' . . . .").) Jackson states that it purchased the Attachmate Products by issuance of purchase orders. (*Id*. ¶ 4 & Ex. 6 (purchase orders for 2005, 2006, & 2007).) In addition, Jackson licensed from Attachmate the right to install copies of several types and versions of the Attachmate Products. (Compl. ¶ 17; *see* Proul Decl. ¶ 4.) Jackson was provided with paper and electronic copies of Attachmate's applicable end user license agreement ("EULA") for each of the Attachmate Products. (Compl. ¶ 18 & Ex. A.) Jackson received and agreed to the EULAs. (*Id*. ¶ 18.) Attachmate contends that the EULAs grant Jackson the right to install and use one copy of the Attachmate Product on a single personal computer per license purchased and specify that any further use or installation of the Attachmate Product may be accomplished only if Jackson has purchased a separate license for each computing device that has the ability to access or use the Attachmate Product. (*Id*. ¶ 19.) Attachmate also asserts that the EULAs prohibit Jackson from making, installing, or using any copies of software not specifically authorized and prohibit Jackson from installing versions of the Attachmate Products for which it has no license. (*Id*. ¶¶ 19-20.)

Over the years, Jackson employees have contacted Attachmate employees in Washington regarding technical support issues. (Declaration of Dolph Silver ("Silver Decl.") (Dkt. # 18) ¶ 1 & Ex. A (2007 emails); Declaration of Jean Edelhertz ("Edelhertz Decl.") (Dkt. # 19) ¶ 3 & Ex. A (1997 online contacts), ¶ 6 & Ex. B (2000 telephone call), ¶ 13 & Ex. C (2009 telephone call).) Jackson employees have also contacted Attachmate employees in Washington regarding potential purchases and related matters.

(Edelhertz Decl. ¶¶ 8-12 & Ex. C.) Attachmate requires customers who purchase products directly from Attachmate to send payments to locations in Washington. (Declaration of Gary Rigsby ("Rigsby Decl.") (Dkt. # 20) ¶ 2.) In 2005, 2006, 2007, and 2008, Jackson made payments by check to Attachmate at addresses in Washington. (*Id*. ¶ 3 & Ex. A.) Attachmate's Website lists its Washington address. (Makey Decl., Ex. A.)

On May 19, 2009, Jackson provided a self-audit report to Attachmate regarding the Attachmate Products installed on Jackson's computers and systems. (*Id*. ¶ 22.) The audit allegedly revealed widespread over-installation and misuse of Attachmate Products. (*Id*. ¶ 23.) In this lawsuit, Attachmate brings claims against Jackson for copyright infringement and breach of the terms of the EULAs. (*Id*. ¶¶ 28-33 (copyright infringement), 34-42 (breach of contract).) Jackson now moves to dismiss for lack of personal jurisdiction. (Mot. (Dkt. # 11).) In the alternative, Jackson requests that the court transfer this case to the United States District Court for the Southern District of Florida.

### III. ANALYSIS

**A. Personal Jurisdiction**

A federal court may rule on the merits of a case only if it has personal jurisdiction over the parties. *Potter v. Hughes*, 546 F.3d 1051, 1060 (9th Cir. 2008). On a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proof to demonstrate that jurisdiction is appropriate. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). "Although the burden is on the

plaintiff to demonstrate that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell*, 575 F.3d at 985 (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court must accept uncontroverted allegations in the plaintiff's complaint as true and resolve conflicts between the facts contained in the parties' affidavits in favor of the plaintiff. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Where, as here, no applicable federal statute governs personal jurisdiction, the court must apply the law of the state in which the district court sits, namely, Washington law. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because Washington's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under Washington law and federal law merge together.[1] *See Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989); *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004); *Corbis Corp.*, 2009 WL 2486163, at *2 (stating that "Washington's long-arm statute establishes personal jurisdiction over a foreign party to the full extent permitted by due process" in a suit alleging copyright infringement claims against a Wisconsin-based defendant). "[A]

---

[1] Under Washington's long-arm statute, any person who does any of the acts enumerated in the statute is submitted to the jurisdiction of Washington as to any cause of action arising from the act. RCW 4.24.185(1). The long-arm statute reaches, *inter alia*, causes of action arising from "[t]he commission of a tortious act within this state." RCW 4.28.185(1)(b). "A tortious act occurs in Washington under RCW 4.28.185(1)(b) when the injury occurs in this state." *Harbison v. Garden Valley Outfitters, Inc.*, 849 P.2d 669, 674 (Wash. Ct. App. 1993). Here, the alleged injury to Attachmate was suffered in Washington. *See Corbis Corp. v. Integrity Wealth Mgmt., Inc.*, No. C09-708 MJP, 2009 WL 2486163, at *2 (W.D. Wash. Aug. 12, 2009).

court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Yahoo! Inc.*, 433 F.3d at 1205 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Unless a defendant's contacts with a state are so substantial, continuous, and systematic as to establish "general jurisdiction," which is not alleged here, the court may exercise only "specific jurisdiction." *Id.*

The Ninth Circuit follows a three-prong test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citations omitted).

### 1. Purposeful Availment and Purposeful Direction

The first prong of the specific jurisdiction test is satisfied by either purposeful availment or purposeful direction. *Brayton Purcell*, 575 F.3d at 985. Courts generally use a purposeful availment analysis when the action sounds in contract and follow a purposeful direction analysis when the action sounds in tort. *Id*. In this case, Attachmate asserts claims for copyright infringement and for breach of contract, which sound in tort and contract, respectively.

####   *i.  Purposeful Direction*

In the Ninth Circuit, courts evaluate purposeful direction using the three-part effects test taken from *Calder v. Jones*, 465 U.S. 783 (1984). *Brayton Purcell*, 575 F.3d at 986. "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id*. (quoting *Yahoo! Inc.*, 433 F.3d at 1206).

Here, the first and third elements of the *Calder* effects test are satisfied. With respect to the intentional act element, the Ninth Circuit construes "'intent' . . . as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Jackson committed an intentional act when it allegedly installed and used unlicensed copies of the Attachmate Products. Next, with respect to the foreseeable harm element, the Ninth Circuit deems this element satisfied "when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton Purcell*, 575 F.3d at 988. Resolving the facts in favor of Attachmate, it was foreseeable that Attachmate would be harmed by

infringement of its copyrights and that this harm would occur in Washington. *See id*. Jackson contends that it had no knowledge that Attachmate's headquarters was located in Washington, but the record, when viewed in favor of Attachmate, belies this assertion.

The crux of the *Calder* effects test thus focuses on the second element: did Jackson expressly aim its intentional conduct at Washington? Recently, in *Brayton Purcell*, the Ninth Circuit reiterated that this element requires "something more" than mere foreseeability in order to justify the assertion of personal jurisdiction, and underscored that "something more" means "conduct expressly aimed at the forum." *Id*. at 986. The concept of express aiming, however, "hardly defines itself," *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000), and courts have struggled to apply this concept to the facts of particular cases. Indeed, the Ninth Circuit's guidance as to the proper application of this element has been characterized as "somewhat inconsistent." *Wyatt Tech. Corp. v. Smithson*, No. CV 05-1309 WMB (RZx), 2005 WL 6132329, at *3 (C.D. Cal. Aug. 30, 2005).

One clear import of the Ninth Circuit's case law regarding express aiming is that the district court's inquiry on this score must be grounded squarely in the facts of the particular case. *See id.* at *4. In *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), reversed on other grounds, 523 U.S. 340 (1998), the Ninth Circuit concluded that the *Calder* effects test was met where the defendant "willfully infringed copyrights owned by [the plaintiff], which, as [the defendant] knew, had its principal place of business in the [forum]." 106 F.3d at 289. Similarly, in *Bancroft & Masters*, the Ninth Circuit stated that the express aiming

requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." 223 F.3d at 1087. By contrast, in *Schwarzenegger*, the Ninth Circuit concluded that the express aiming requirement was not satisfied where the defendant used the plaintiff's likeness in an advertisement aimed at Ohio rather than the California forum and the defendant had no reason to believe the advertisement would be seen by any Californians, despite the fact that the defendant's intentional act caused harm to the plaintiff in California and the defendant may have known the plaintiff lived in California. 374 F.3d at 806-07. Finally, in *Brayton Purcell*, the Ninth Circuit held that the defendant individually targeted the plaintiff "by making commercial use of [the plaintiff's] copyrighted material for the purpose of competing with [the plaintiff] for elder abuse clients." 575 F.3d at 987. Responding to Judge Reinhardt's dissent, the court stated:

> Assuming the dissent is correct that something more than knowledge of the residence of the plaintiff is required for there to be express aiming at the Forum, such a requirement is satisfied here; the parties are competitors in the same business so that the intentional infringement will advance the interests of the defendant to the detriment of the Forum interests of the plaintiff.

*Id*. at 988. In addition to the Ninth Circuit case law, this court has previously held that the *Calder* effects test was satisfied where the plaintiff made "a prima facie showing that Defendant willfully infringed copyrights owned by Plaintiff and alleg[ed] that Defendant knew Plaintiff's headquarters was in Washington." *Corbis Corp.*, 2009 WL 2486163, at *2.

Turning to the facts of this case, the court finds that Jackson expressly aimed its intentional acts at Attachmate and Washington when it allegedly infringed Attachmate's copyrights in connection with the parties' ongoing, contract-based relationship. As a preliminary matter, the facts of this case are unlike those of *Schwarzenegger* in which the parties had no prior relationship. Here, Attachmate and Jackson entered into a contractual relationship with respect to the Attachmate Products, and the evidence, viewed in the light most favorable to Attachmate, demonstrates that Jackson employees contacted Attachmate employees in Washington regarding various troubleshooting and support issues for the Attachmate Products and made payments to Attachmate at Washington addresses. This relationship laid the groundwork for Jackson's alleged acts of copyright infringement by providing the Attachmate Products to Jackson, and it is against this foundation that Jackson allegedly made the decision to commit acts of infringement. Jackson asks the court to view the alleged copyright infringement in a vacuum, as if Jackson had merely found the Attachmate Products on a sidewalk in Miami or bought them at a garage sale. The court declines to do so. The ongoing relationship between the parties confirms that "something more" exists on the facts of this case, and that Jackson expressly aimed its actions at Attachmate and Washington.

In sum, the court concludes that Attachmate has satisfied all three elements of the *Calder* effects test.

2. <u>Arising Out of Washington-Related Activities</u>

To determine if the claim asserted in the litigation arises out of the defendant's forum-related activities, the court must consider whether the plaintiff would have been

ORDER- 10

injured "but for" the defendant's conduct directed toward the plaintiff in the forum state. *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). This prong is also satisfied: but for Jackson's copyright infringement, which affected Attachmate in Washington, and the parties' ongoing, contract-based relationship, Attachmate's cause of action for copyright infringement would not have arisen. *See Corbis Corp.*, 2009 WL 2486163, at *3.

3. Reasonableness of Jurisdiction

The third requirement for specific jurisdiction is reasonableness. *Bancroft & Masters*, 223 F.3d at 1088. The burden of demonstrating unreasonableness rests with the defendant, and to meet this burden the defendant must "put on a 'compelling case.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In determining reasonableness, courts must consider several specific factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Id.*

On the present record, the court finds that Jackson has not met its burden of putting on a "compelling case" that jurisdiction in Washington is unreasonable. Although many of the factors suggest that Florida may be a more convenient forum for this dispute, the overall balance of the factors does not tilt sufficiently toward a finding of unreasonableness so as to satisfy the necessary showing. As an initial matter, the parties

do not dispute that Florida constitutes a viable, alternative forum. Next, the court is mindful that Jackson's interjection into Washington is minimal, the burden on Jackson of litigating far from Florida is not inconsiderable, and that many of the witnesses and much of the evidence, although not all, may be located in Florida. Jackson has also raised meaningful questions regarding potential conflicts with Florida's sovereignty, and there is no reason to suppose that Attachmate could not obtain relatively convenient and effective relief in Florida, despite the additional burdens of litigating at a great distance from its headquarters. These factors all support Jackson's argument. By contrast, Washington has a strong interest in adjudicating this dispute as Attachmate is a Washington corporation that was allegedly harmed by Jackson's copyright infringement. *Cf. TRC Tire Sales, LLC v. Extreme Tire & Serv., Inc.*, No. CV-08-015-FVS, 2008 WL 3200727, at *7 (E.D. Wash. Aug. 6, 2008). This factor cuts against a finding of unreasonableness. As this review makes plain, Washington may not represent the most convenient forum for resolution of the parties' dispute. Nevertheless, it does not follow that jurisdiction in Washington is unreasonable. Though many of the factors discussed above favor Jackson, the court is not persuaded that the factors collectively amount to a "compelling case" that jurisdiction in Washington is unreasonable.

In light of the foregoing findings, the court denies Jackson's motion to dismiss for lack of personal jurisdiction.

**B.     Transfer of Venue**

In the alternative, Jackson requests that the court transfer the case to the United States District Court for the Southern District of Florida. 28 U.S.C. § 1404(a) provides:

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden rests with the moving party to show a transfer is warranted, *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979), but the decision to transfer is ultimately left to the sound discretion of the district court and must be made on an "individualized, case-by-case consideration of convenience and fairness," *see Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The statute has two requirements: First, the district to which the defendant seeks to have the action transferred must be one in which the action "might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this lawsuit could have been brought in Florida. Second, the transfer must be for "the convenience of parties and witnesses," and "in the interest of justice," which requires the court to weigh the factors discussed in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000). Under *Jones*, a court "may consider" a host of factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99. In addition to the eight factors enumerated in *Jones*, courts are also to consider a valid forum selection clause and the public policy of the forum state as equally "significant factor[s]" in the analysis. *Id*. at 499.

   i.   *Forum Selection Clause*

"Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). Jackson argues that the court must transfer this action to Florida in accordance with a forum selection clause in the purchase orders. The parties agree that the purchase orders include the following forum selection clause: "Any litigation between the parties regarding the terms of performance of this contract shall take place in Miami Dade County, Florida." (Proul Decl., Ex. 6.) The purchase orders also specify that the provisions of the contracts shall be governed in accordance with Florida law. (*Id.*) By contrast, the EULAs do not contain a forum selection clause and provide that they shall be governed in accordance with Washington law. (Compl., Ex. A.)

Here, Jackson has not shown that this lawsuit involves the terms of performance of the purchase orders—as opposed to the EULAs—such that the forum selection clause applies. On its face, the complaint does not allege causes of action regarding the terms of the purchase orders; rather, Attachmate's breach of contract claim focuses on the terms of the EULAs. Jackson conflates the two contracts, but the court sees no reason to do so on the facts presented. The nature of these contracts has not been briefed in full by the parties. Nevertheless, the purchase orders and the EULAs concern different subject

matter and were entered into independently. On this record, the court concludes that the forum selection clause does not require the court to transfer this action to Florida. To the extent further development of the facts clarifies the nature of the contracts, Jackson may, if appropriate, renew its request to transfer at that time.

    *ii.* Jones *Factors*

Having considered all of the *Jones* factors, the court finds that on balance they do not sufficiently weigh in favor of transfer so as to justify upsetting Attachmate's choice of forum. The court is mindful of the burden on Jackson associated with litigating this lawsuit in Washington and that many, although not all, potential witnesses reside in Florida. Additionally, Jackson has only minimal contacts with Washington. These considerations suggest that Florida may, in many ways, be a more convenient location for this lawsuit. Nevertheless, Attachmate is a Washington corporation with strong contacts to Washington and it specifically chose to bring suit in Washington instead of Florida. "There is a strong presumption in favor of plaintiff's choice of forum." *Wilton v. Hallco Indus., Inc.*, No. C08-1470 RSM, 2009 WL 113735, at *2 (W.D. Wash. Jan. 15, 2009) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), and *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.")); *see Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006). These considerations weigh strongly in favor of maintaining this action in Washington and balance out the factors that weigh in favor of Jackson. The court finds

the other factors to be essentially neutral. Therefore, the court concludes that the *Jones* factors do not justify transfer to Florida.

In sum, having considered the forum selection clause and the *Jones* factors, the court denies Jackson's motion to transfer without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Jackson's motion to dismiss or, in the alternative, motion to transfer (Dkt. # 11).

Dated this 13th day of January, 2010.

JAMES L. ROBART
United States District Judge